THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
CRIMINAL CASE NO. 1:19-cr-00065-MR-WCM-2

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | <u>O R D E R</u> |
| ) | |
| SHANE McFARLAND, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

**THIS MATTER** is before the Court on the Defendant's "Motion for Compassionate Release Pursuant to 18 U.S.C. § 3582(c)(1)(A)" [Doc. 81].

**I.   BACKGROUND**

In July 2019, the Defendant Shane McFarland was charged, along with a co-defendant, in a Bill of Indictment with conspiracy to possess with intent to distribute various controlled substances. [Doc. 1]. The Defendant and his coconspirator obtained drugs such as "DMT," "MDMA," "LSD," "Shrooms," mescaline, marijuana, ketamine, and Alprazolam from out of state and international sources of supply via the "Dark Web" for distribution. [Doc. 49 at 1]. The two were assisted in their drug-trafficking activities by a minor. [Id.]. The Defendant was found to be accountable for 486.05 kg of converted

drug weight and to have possessed at least four firearms in connection with his drug-trafficking activities. [Doc. 66: PSR at 33-35].

The Defendant pled guilty to the Bill of Indictment on August 24, 2020. [Doc. 48]. His advisory Guideline range, before any departure or variance, was determined to be 121 to 151 months. [Doc. 78: SOR at 1]. At sentencing, the Defendant sought a variance from the Guidelines based on several medical and mental health conditions. [Doc. 70: Sent. Memo. at 2-3; Doc. 66: PSR at 68-79]. On April 22, 2021, this Court varied downward from the advisory Guidelines range, finding that the Defendant's aggravating role was not as great as calculated by the Guidelines. [Doc. 78: SOR at 3]. The Court found no reason to vary or depart based on the Defendant's asserted medical conditions. [Id.]. Ultimately, the Court sentenced the Defendant to 92 months' imprisonment and three years of supervised release. [Doc. 77: Judgment at 2-3]. The Defendant is currently serving his sentence at FCI Coleman (Medium) in Sumterville, Florida, with a projected release date of April 25, 2027.[1]

In March 2022, less than one year after arriving at the facility, the Defendant sought a reduction of his sentence through an application to the

---

[1] See https://www.bop.gov/inmateloc/ (last accessed May 26, 2023).

Bureau of Prisons. [Doc. 82 at 3]. In a letter dated May 3, 2022, Warden S. Salem denied the Defendant's request, stating as follows:

> A review of your medical documentation reflects you are diagnosed with hyperkalemia, and pain in leg. You are being treated in accordance with evidence[-]based standards. Your condition is stable, you are not terminally ill, and your life expectancy is normal for your age. You are not completely disabled and totally confined to a bed or chair. You are able to independently attend to your activities of daily living and your medical condition does not affect your ability to function in a correctional setting.

[Id. at 2].

On January 3, 2023, the Defendant filed the present motion for compassionate release, arguing that his multiple medical conditions amount to substantial and compelling reasons justifying release. [Doc. 81]. He further argues that he is rehabilitated, and that his time in prison has been negatively impacted by the COVID-19 pandemic, making his sentence more punitive than this Court intended at sentencing. [Id. at 6-8]. The Court directed the Government to respond to the Defendant's motion. [Text-Only Order entered Jan. 4, 2023]. The Government filed its response on January 26, 2023. [Doc. 738]. The Court received the Defendant's Reply on February 27, 2023, and his Amended Reply on May 9, 2023. [Docs. 85, 86].

3

## II. DISCUSSION

As a general matter, the Court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c). The only exceptions to this general rule are the exceptions specifically delineated by Congress. Id. One such exception is the compassionate release exception, which gives the Court discretionary authority to reduce a sentence upon a finding that "extraordinary and compelling reasons warrant" the reduction. Id. § 3582(c)(1)(A)(i).

Section 3582(c)(1)(A), as amended by The First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194, 5239 (Dec. 21, 2018), permits a defendant to seek a modification of his sentence for "extraordinary and compelling reasons," if the defendant has "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). The Government concedes that the Defendant has satisfied these statutory requirements here; accordingly, the Court will proceed to address the merits of the Defendant's motion.

As is relevant here, the Court may reduce a defendant's sentence under 18 U.S.C. § 3582(c)(1)(A)(i) for "extraordinary and compelling reasons if "such reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i). The Court must also consider the factors set forth in 18 U.S.C. § 3553(a), to the extent that such factors are applicable. Id.

Section 1B1.13 of the United States Sentencing Guidelines sets forth the Sentencing Commission's policy statement applicable to compassionate release reductions. See U.S.S.G. § 1B1.13. This policy statement, however, was adopted before the First Step Act, and the Sentencing Commission has not yet updated the policy statement to account for the fact that defendants are now permitted to file their own motions for compassionate release. In light of these circumstances, the Fourth Circuit Court of Appeals has held that § 1B1.13 is no longer an "applicable" policy statement that constrains the discretion of the district courts in finding that "extraordinary and compelling reasons" exists to warrant a reduction in sentence. See United States v. McCoy, 981 F.3d 271, 282 (4th Cir. 2020) ("By its plain terms, . . . § 1B1.13 does not apply to defendant-filed motions under § 3582(c)(1)(A)"). Thus, this Court is "empowered . . . to consider *any* extraordinary and

5

compelling reason for release that a defendant might raise." Id. at 284 (quoting United States v. Zullo, 976 F.3d 228, 230 (2d Cir. 2020)). Nevertheless, the Court of Appeals has recognized that the policy statement "remains helpful guidance even when motions are filed by defendants." United States v. Hargrove, 30 F.4th 189, 194-95 (4th Cir. 2022) (quoting McCoy, 981 F.3d at 282 n.7). The Defendant bears the burden of establishing that he is eligible for a sentence reduction. United States v. Jones, 836 F.3d 896, 899 (8th Cir. 2016); United States v. Green, 764 F.3d 1352, 1356 (11th Cir. 2014).

Here, the Defendant argues that his various medical conditions, including "leg-length discrepancy, knee pain, acute back pain, spinal deterioration, cellulitis, C4-C5 tear, C6-C7 bulge, cervical hypolordosis, bone contusion of patella, fluid on knee, . . . cysts on buttocks. . . . Tourette's Disorder, Obsessive Compulsive Disorder, ADHD, Intermittent Explosive Disorder, anxiety, and learning disabilities," constitute extraordinary and compelling reasons justifying a compassionate release. [Doc. 81 at 2]. A review of the PSR indicates that most, if not all, of these conditions were present at the time the Defendant committed his drug-trafficking offense.

[Doc. 66 at 40-43]. Thus, the Defendant's medical conditions were not a deterrent or inhibitor to his criminal activity.

The Defendant argues that his medical conditions constitute a "serious physical or medical condition" that "substantially diminishes" his ability to provide self-care within the prison. The Defendant's BOP medical records, however, indicate that he is receiving appropriate care and medication for the treatment of these conditions. [See 82 at 4-78]. As the warden observed, the Defendant's medical condition is stable, and he can appropriately function in the correctional setting. [Id. at 2]. There is no evidence in the records of hospitalization or any substantial impairment resulting from these conditions. Further, the Defendant has not shown that these conditions are uncontrolled or that they substantially diminish his ability to provide self-care within the prison setting. Accordingly, the Court concludes that the Defendant's medical conditions—even if considered in their totality—are neither extraordinary nor compelling, and therefore his motion must be denied.

The Defendant also argues that the quarantine restrictions imposed by the BOP during the COVID-19 pandemic have been unduly harsh, resulting in frequent lockdowns, limited visitation from family, and reduced

7

Case 1:19-cr-00065-MR-WCM   Document 87   Filed 06/05/23   Page 7 of 10

opportunities for rehabilitation. [Doc. 81 at 7-8]. These measures, however, were temporary in nature and were necessary in order to slow the spread of virus. Moreover, the circumstances the Defendant describes were not unique to him, as many prisoners throughout the BOP were subjected to similar conditions, at least temporarily.

For all these reasons, the Court concludes none of the grounds cited by the Defendant, considered either singly or in combination, constitute extraordinary and compelling reasons for his early release.

Even if the Defendant could establish an extraordinary and compelling reason, this Court still must consider the § 3553(a) factors, as "applicable," as part of its analysis of determining whether a sentence reduction is warranted. See § 3582(c)(1)(A); United States v. Chambliss, 948 F.3d 691, 694 (5th Cir. 2020).

Here, the Defendant's crime was serious. The Defendant with an extensive drug conspiracy, along with a co-defendant and an unindicted minor, which involved the distribution of significant drug quantities procured from the Dark Web. He imported from different sources, including from out-of-state and overseas. The Defendant sent packages containing drugs to a minor who would accept on his behalf. He used a computer built by himself

8

and designed to avoid detection by law enforcement, and he used multiple firearms in furtherance of his drug activities. The text messages highlighted in the PSR reaffirm the large quantities negotiated, ordered, delivered, sold, and/or paid for by the Defendant during the drug-trafficking conspiracy. [Doc. 66: PSR at ¶¶ 8-29].

Aside from working toward his GED and offering a proposed re-entry plan, the Defendant offers no justification for considering the Section 3553(a) factors any differently than this Court did at his original sentencing. The Court was well aware of the Defendant's medical conditions at sentencing, as well as his arguments that his mobility problems would make prison life difficult for him. [Doc. 70: Sent. Memo. at 2, 3; Doc. 66: PSR at 40-43]. Based on the Defendant's history and characteristics and the need to protect the public from further crimes, the need to provide just punishment, and the need to deter Defendant and others from engaging in similar criminal activity, the Court concludes that his sentence of 92 months in prison is sufficient but not greater than necessary to accomplish the § 3553(a) sentencing objectives.

In sum, the Court finds that there are no "extraordinary and compelling" reasons" for the Defendant's release and that analysis of the relevant §

9

3553(a) factors continue to weigh in favor of his continued incarceration. Accordingly, the Defendant's motion for compassionate release is denied.

**O R D E R**

**IT IS, THEREFORE, ORDERED** that the Defendant's "Motion for Compassionate Release Pursuant to 18 U.S.C. § 3582(c)(1)(A)" [Doc. 81] is **DENIED**.

**IT IS SO ORDERED.**

Signed: June 2, 2023

Martin Reidinger
Chief United States District Judge